# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASSURANT, INC., <br><br> *Plaintiff*, <br><br> v. <br><br> INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, and CALLAHAN CELLULAR L.L.C., <br><br> *Defendants.* | C.A. No. 24-cv-344-GBW |

## DEFENDANTS' OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated: May 8, 2024

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC*
*Intellectual Ventures II LLC*
*Callahan Cellular L.L.C.*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
Heather S. Kim
John Downing
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel. (650) 453-5170
Fax. (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com

HKim@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com

**TABLE OF CONTENTS**

Page

I. PRELIMINARY STATEMENT ................................................................................... 1

II. FACTS ........................................................................................................................... 2

III. LEGAL STANDARD.................................................................................................... 6

IV. ARGUMENT ................................................................................................................. 8

    A. Assurant's Complaint Should Be Dismissed In Its Entirety ................................. 8

        1. IV's Actions Did Not Create A Case Or Controversy................................ 8

        2. Governing Law Shows There Is No Case Or Controversy...................... 10

V. CONCLUSION............................................................................................................ 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied Mineral Prods. v. OSMI, Inc.*,
 870 F.3d 1337 (Fed. Cir. 2017)........................................................................................11

*BASF Plant Sci., LP v. Nuseed Ams. Inc.*,
 2017 U.S. Dist. LEXIS 131294 (D. Del. Aug. 17, 2017) ...................................................6, 7

*Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*,
 673 F.2d 700 (3d Cir. 1982)................................................................................................7

*MedImmune. Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*,
 599 F.3d 1377 (Fed. Cir. 2010)........................................................................................11

*MedImmune, Inc. v. Genentech, Inc.*,
 549 U.S. 118 (2007)..........................................................................................................11

*Microsoft Corp. v. SynKloud Techs., LLC*,
 484 F. Supp. 3d 171 (D. Del. 2020)....................................................................................7

*Microsoft Corp. v. Webxchange, Inc.*,
 606 F. Supp. 2d 1087 (N.D. Cal. 2009) .............................................................................9

*Organic Seed Growers & Trade Ass'n v. Monsanto Co.*,
 718 F.3d 1350 (Fed. Cir. 2013)..........................................................................................7

*Prasco, LLC v. Medicis Pharm. Corp.*,
 537 F.3d 1329 (Fed. Cir. 2008).............................................................................10, 11, 12

*SanDisk Corp. v. STMicroelectronics, Inc.*,
 480 F.3d 1372 (Fed. Cir. 2007)........................................................................................12

*Serco Servs. Co., L.P. v. Kelley Co.*,
 51 F.3d 1037 (Fed. Cir. 1995)............................................................................................7

*Verance Corp. v. Digimarc Corp. (Del.)*,
 2011 U.S. Dist. LEXIS 58788 (D. Del. May 26, 2011)......................................................6

**Statutes**

28 U.S.C. § 2201 .....................................................................................................................1

**Other Authorities**

Fed. R. Civ. P. 12(b)(1)........................................................................................................1, 6

Defendants Intellectual Ventures I LLC, Intellectual Ventures II LLC, and Callahan Cellular L.L.C. (collectively "Defendants" or "IV") submit Defendants' Motion to Dismiss Plaintiff Assurant, Inc.'s ("Assurant") Complaint for Declaratory Judgment ("Complaint"), pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201.[1]

## I.  PRELIMINARY STATEMENT

Assurant's Complaint seeking declarations that it does not infringe U.S. Patent Nos. 10,567,391, 8,332,844, 7,314,167, and 7,712,080 (collectively, the "DJ Patents") should be dismissed because IV's communications with Assurant do not show there was any actual legal controversy.  Assurant's Complaint is based on blatant mischaracterizations of the communications between the parties, which demonstrate that it was Assurant itself that requested the very materials, including a license agreement with specific terms, that it now alleges show that there was an actual legal controversy between the parties having adverse legal interests, of sufficient immediacy and reality.  In fact, IV never made any threats to sue Assurant, nor did it make any threats of sufficient immediacy or particularity to support an action for declaratory judgment.

Instead, the facts show that IV approached Assurant to amicably discuss a potential licensing opportunity for its portfolio of patents.  Assurant took the lead: (1) scheduling a meeting with IV; (2) requesting that IV send Assurant materials before the meeting; and (3) finally, during the meeting, requesting that IV send Assurant specific details about any technology used by Assurant that might be relevant to IV's patent portfolio, as well as a draft license agreement. Subsequently, Assurant even requested revisions to the proposed licensing agreement to include what was called "most favored nation" ("MFN") preferential terms specially for Assurant.

---

[1] Submitted herewith is the May 8, 2024 Declaration of Jonathan K. Waldrop ("Waldrop Decl."), with exhibits thereto ("Ex. __").

Notably, in the course of these discussions, IV never sent Assurant any claim charts alleging Assurant infringed its patents. Yet, although the licensing discussions had appeared to be cordial and productive, two days after receiving the revised license agreement, pursuant to Assurant's request, Assurant notified IV that it would not license any of IV's patents, unilaterally claimed there was a patent dispute between the parties, and immediately filed its Complaint the same day. Assurant is effectively using the very materials Assurant requested from IV in an effort to manufacture the notion that IV was imminently filing suit against Assurant where none existed.

Assurant's Complaint is rife with speculation and a few cherry-picked sentences from IV's materials that Assurant uses to create a false impression that a case or controversy exists. For example, Assurant relies on IV's suits filed against certain other defendants and alleges that IV sent Notice Letters to these defendants ostensibly as a basis for establishing a case or controversy here. (Compl. at ¶¶ 51-53, 55-56.) However, Assurant can point to no such Notice Letter in the instant case because IV did not serve one. (Compl. at ¶¶ 57, 38-48.) Assurant's speculation is not sufficient to demonstrate that any case or controversy exists.

Assurant's Complaint should be dismissed in its entirety.

**II.    FACTS**

On January 3, 2024, Steve Joroff, a licensing executive at IV, first contacted Assurant "to initiate a dialogue concerning intellectual property and licensing matters with Assurant. (Waldrop Decl. at ¶ 3 & Ex. 1 [e-mail exchanges between S. Joroff and S. Garber and B. Huber, Jan. 3 – 23, 2024].) He stated that "[e]xploring the potential synergy between IV's extensive worldwide patent portfolio and Assurant's endeavors could prove mutually advantageous." *Id.* After his initial e-mail received no response, Mr. Joroff sent a follow-up e-mail in which he stated:

> Our comprehensive program extends to all financial services companies, ensuring fair and impartial financial terms based on each company's U.S. revenue. I want to emphasize that ***this is not a selective initiative***; all companies within the financial

2

> services sector are being presented with these terms. . . . ***The program is not designed to single out Assurant***; instead, it offers an opportunity for the efficient acquisition of rights to our patented technologies.

(Ex. 1 [Jan. 12, 2024 e-mail from S. Joroff to S. Garber]) (emphasis added.)  Mr. Joroff did not threaten litigation nor did he outline any patent infringement theory in either of these communications—or indeed, in any subsequent communications with Assurant.  *Id*.

The initially-intended recipient, Sheila Garber, responded (1) that she had not received the initial e-mail, (2) apologized for her lack of response, and (3) stated that her colleague, Ben Huber, would look into the matter as he was the appropriate contact for patent-related issues.  (Ex. 1 [Jan. 18, 2024 e-mail from S. Garber to S. Joroff, copied to B. Huber].)  After Mr. Joroff suggested that a "30-minute conversation" may be helpful, Mr. Huber responded on January 23, 2024, to schedule such a meeting and noted that "[b]ased on your message, it seems like there may be some materials you can share with me.  If so, I would appreciate you sending those materials to me in advance of our discussion."  (Ex. 1 [Jan. 23, 2024 e-mail from B. Huber to S. Joroff].)  Mr. Joroff responded the same day, thanking Mr. Huber for setting up a meeting and attaching three files covering "IV, the IV patent portfolio, the relevance of the portfolio to insurance companies like Assurant and the scope of the IV patent licensing program."  (Ex. 1 [Jan. 23, 2024 e-mail from S. Joroff to B. Huber].)  One of those three documents is the generic "Banking Tech Presentation" to which Assurant refers in the Complaint.  (Waldrop Decl. at ¶ 4 & Ex. 2 [Banking Tech Presentation]; *see also* Compl. at ¶ 44.)  This presentation refers to certain software platforms commonly used in the banking industry and points out patents owned by IV that relate to those platforms.  *Id*.  Not only is the Banking Tech Presentation not targeted at Assurant, but Assurant is never even mentioned in the entire presentation.  *Id*.  The other two presentations discussed IV and its licensing initiative and similarly never mention Assurant or accuse it of infringing any

3

of IV's patents.  (Waldrop Decl. at ¶¶ 5-6 & Exs. 3 and 4 ["IIF Licensing Opportunity: Financial Services" and "Intellectual Ventures Financial Services Licensing Program"].)

The parties met on February 6, 2024, as memorialized by Mr. Joroff in an e-mail exchange which laid out the parties' "to-do" list following the meeting:

1. IV to send more specific details about technologies being used that are relevant to the IV patent portfolio.
2. IV to send a draft license Agreement.
3. Assurant to review the new material and cross-check which vendors are providing the relevant technologies in item 1.
4. Assurant to provide IV with feedback on vendors and the draft license agreement.

(Waldrop Decl. at ¶ 7 & Ex. 5 [February 6 e-mail from S. Joroff and B. Huber].)  This e-mail also referenced that IV was "to contact Asurion," a company that Mr. Huber suggested IV might also want to contact about licensing IV's portfolio.  *Id.*

Pursuant to the parties' to-do list, on February 12, 2024, IV sent the draft patent license agreement Assurant requested for its review.  (Ex. 5.)  In this e-mail, Mr. Joroff noted that it did "not include the MFN clause because it would slow the process down.  When you're ready to see the MFN, just let me know.  I'll have it prepared ASAP."  Mr. Joroff also attached a slightly-revised version of the presentation regarding IV's licensing initiatives that was more focused on technologies that IV understood may be relevant to Assurant, again fulfilling Assurant's request.  (*Id.*, *see also* Waldrop Decl. at ¶ 8 & Ex. 6 [IIF Licensing Opportunity: Assurant].)  These changes were minor.  For example, in the generic presentation an "Agenda" slide refers to "Banks" and in the focused presentation the slide uses the name "Assurant" instead.  (*Compare* Ex. 3 [generic presentation] at 16 & Ex. 6 [Assurant presentation] at 15.)  Only three pages of the newer presentation specifically related to potential intersections between IV's patent portfolio and Assurant's business.  (Ex. 6 [Assurant presentation] at 21-23.)  IV does not threaten litigation in any of them; it only points out specific patents that Assurant may want to license because they

relate to technology that Assurant appears to use or are in general use in the banking industry, as Assurant requested.

Ben Huber of Assurant responded on February 15, 2024, requesting that IV "send the MFN materials so I can review them in connection with the draft license." (Ex. 5 [Feb. 15, 2024 e-mail from B. Huber to S. Joroff].) Mr. Joroff replied that he would send the MFN language as soon as possible. (Ex. 5 [Feb. 15, 2024 e-mail from S. Joroff to B. Huber].) He also noted that "[y]ou'll be interested to know that I have a meeting set with the other consumer electronics insurance company whose name also starts with an A," referring to the other insurance company in the industry that IV had not originally included within its list of potential licensees, but which Mr. Huber suggested may be another company interested in licensing IV's patented technology. *Id*.

On March 13, 2024, Mr. Joroff sent a revised draft of the proposed license agreement that included the MFN language that Mr. Huber had requested. *Id*. Mr. Joroff stated: "The availability of an MFN to financial services licensees will not be indefinite so I recommend that if you plan to take a license, you do so sooner than later. Please let me know if you have any questions." *Id*. Mr. Joroff stated that the MFN offer was not indefinite, but in no way did he threaten litigation as the alternative; instead, he suggested merely that the preferential terms may be withdrawn. *Id*.

> Two days later, counsel for Assurant sent an e-mail to Mr. Joroff stating:
>
> I wanted to reach out to introduce myself and my colleagues, Keith and Tom. We have been retained by Assurant as counsel to help it in connection with its patent dispute with Intellectual Ventures.
>
> Based on our investigation, we do not believe that Assurant has infringed any of the patents that Intellectual Ventures has claimed read on technology that Assurant allegedly uses, and thus Assurant does not intend to take a license at this time. We understand that you have been speaking with Ben about potential licensing, and one of us will reach out soon.

(Waldrop Decl. at ¶ 9 & Ex. 7 [March 15, 2024 e-mail from M. Howell to S. Joroff].) When Assurant's counsel stated that "one of us will reach out soon," they meant with the Complaint that

5

is the subject of the instant motion, which Assurant filed the same day as it sent the e-mail in which it purportedly claimed for the first time that there was a "patent dispute with Intellectual Ventures." *Id*.

These communications show that IV never threatened to sue Assurant. It never sent claim charts asserting that Assurant infringed any of IV's patents. Indeed, there were only cordial licensing negotiations between the parties in which Assurant requested proposed licensing terms – and even suggested other potential licensees – until Assurant manufactured a purported dispute, broke off negotiations, and immediately sued IV seeking declaratory judgments of non-infringement of the DJ Patents. There is no case or controversy and the Complaint should be dismissed in its entirety.

### III. LEGAL STANDARD

When analyzing a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction, the Court must first determine whether the motion is a facial or a factual attack. *Verance Corp. v. Digimarc Corp. (Del.)*, 2011 U.S. Dist. LEXIS 58788, at *5-6 (D. Del. May 26, 2011) (*citing CNA v. United States*, 535 F.3d 132, 139, 145 (3d Cir. 2008).) "A facial attack concerns an alleged pleading deficiency, whereas a factual attack concerns the actual failure of a plaintiff's claim to comport factually with the jurisdictional prerequisites." *Id*.

With a facial attack, the Court must deem the allegations of the complaint to be true, but "there are three important consequences of a factual attack: (1) there is no presumption of truthfulness; (2) the plaintiff bears the burden of proving subject matter jurisdiction; and (3) the Court has authority to make factual findings on the issue, and can look beyond the pleadings to do so." *Id*. at *6 (*citing CNA*, 535 F.3d at 145); *see also BASF Plant Sci., LP v. Nuseed Ams. Inc.*, 2017 U.S. Dist. LEXIS 131294, at *6 (D. Del. Aug. 17, 2017) ("[Plaintiff] bears the burden of proving we have subject matter jurisdiction.") On a factual attack, the Court can consider

affidavits and other evidence to resolve factual issues bearing on jurisdiction; if the defendants attach factual materials to their motion to dismiss, the Court must treat the motion as a factual attack. *Id*. (*citing Gotha v. United States*, 115 F.3d 176, 179, 36 V.I. 392 (3d Cir. 1997); *see also Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700, 711 (3d Cir. 1982).

In a declaratory judgment action, the plaintiff bears the burden of showing that an actual controversy exists. *Organic Seed Growers & Trade Ass'n v. Monsanto Co*., 718 F.3d 1350, 1354-1355 (Fed. Cir. 2013). "The Declaratory Judgment Act does not grant [] independent subject matter jurisdiction." *BASF Plant*, 2017 U.S. Dist. LEXIS 131294, at *7-8 (*citing Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1335 (Fed. Cir. 2008) (same). In the context of a motion to dismiss a declaratory judgment action, the "Supreme Court has held that a 'case or controversy' exists when 'the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 176 (D. Del. 2020) (*quoting MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007). "The dispute must be 'definite and concrete, touching the legal relations of parties having adverse legal interests'" and a "subjective or speculative fear of future harm" is insufficient." *Id*. at 176-77 (*quoting Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011); *Prasco,* 537 F.3d at 1335.) Even if an actual controversy exists, the exercise of jurisdiction rests within the sound discretion of the Court. *Serco Servs. Co., L.P. v. Kelley Co*., 51 F.3d 1037, 1039 (Fed. Cir. 1995).

## IV.     ARGUMENT

### A.    Assurant's Complaint Should Be Dismissed In Its Entirety

#### 1.    IV's Actions Did Not Create A Case Or Controversy

It is clear that no case or controversy exists here. IV never threatened Assurant with litigation nor did IV ever outline any specific infringement theory that would indicate a dispute existed. IV merely reached out to Assurant as part of its general licensing initiative to the banking industry and provided it with three generic presentations – none of which even mentioned Assurant. *Supra* at 2-4. IV simply engaged in what it understood to be cordial negotiations with Assurant consisting of a few e-mail exchanges and one relatively short video-conference; IV never threated to sue Assurant, nor did it send Assurant a Notice Letter. *Supra* at 2-6.

In fact, IV's representative, Mr. Joroff, explicitly emphasized to Assurant that "all companies within the financial services sector are being presented with these terms. . . . The program is not designed to single out Assurant; instead, it offers an opportunity for the efficient acquisition of rights to our patented technologies." (Ex. 1 [Jan. 12, 2024 e-mail from S. Joroff to S. Garber].) Thus, it is clear from the nature of the correspondence that IV was not threatening to sue Assurant for patent infringement and there is no actual controversy.

The allegations in Assurant's Complaint do not show otherwise. For example, Assurant identified a phrase in the January 12, 2024 e-mail from Mr. Joroff as a basis for its claim that a dispute exists; however, Assurant omitted a key part of the e-mail from what it cited in the Complaint. (Compl. at ¶ 43.) In this email, Mr. Joroff stated: "The license terms will be shared with Assurant in advance of any introductory meeting. This is not an offer that can be refused; rather, it is a crucial step to ensure compliance with IV's patent portfolio." *Id*. In the Complaint Assurant omitted the prefatory language in which IV explained it would share a proposed license agreement before the parties met. In this exchange IV was merely informing Assurant that it would

8

share a proposed license agreement with Assurant before the parties actually met if Assurant requested it; the remainder of the statement was mere puffery akin to stating the deal is too good to be ignored. Courts have held that similar puffery is insufficient to give rise to a case or controversy. *See, e.g.*, *Microsoft Corp. v. Webxchange, Inc.*, 606 F. Supp. 2d 1087, 1090 (N.D. Cal. 2009) (holding a short description of potential patents to be sold "was puffery posing no plausible threat to Microsoft.").

Nor can Assurant demonstrate that the materials it specifically requested that IV send to Assurant show that there was a dispute. Contrary to Assurant's allegations, IV never stated or even implied that Assurant was part of a "'financial services' litigation campaign." (Compl. at ¶ 46.) Nor did IV make litigation threats specific to Assurant in the slide decks IV sent Assurant at Assurant's request. For example, the slide Assurant identified in which IV notes that its "litigation tends to be in multiple waves" was part of the initial generic presentation IV had previously sent to Assurant that just happened to also be included in the more focused presentation it later sent – it was not targeted at Assurant. (Ex. 3 [generic presentation] at 14; Ex. 6 [Assurant presentation] at 13.) Indeed, other than listing Assurant in "Agenda" slides, there were only three slides that discussed Assurant at all – the remainder of the presentation was virtually the same as the generic presentation that IV initially sent to Assurant. (Ex. 6 [Assurant presentation] at 21-23.) As discussed above, those three pages discussed potential intersections between IV's patent portfolio and Assurant's business—as Assurant requested. But they do not contain any threats of litigation, nor do they contain any claim charts or specific allegations of Assurant infringing any of the DJ Patents. *Supra* at 4-5.

Similarly, when Mr. Joroff circulated to Assurant the revised, draft license agreement that included the MFN terms requested by Assurant, his statement – "[t]he availability of an MFN to

9

financial services licensees will not be indefinite so I recommend that if you plan to take a license, you do so sooner than later" – was not a threat of litigation as Assurant implies (Compl. at ¶ 49), but rather an indication that the more favorable terms being offered would not be available forever. (Waldrop Decl. at ¶ & Ex. 5 [March 13, 2024 e-mail from S. Joroff to B. Huber attaching revised license agreement].)  Assurant's argument is analogous to a store putting goods on sale for only a limited time being equivalent to that store threatening to sue its customers if they do not purchase those goods before the sale ends.

The remainder of Assurant's Complaint is based on speculation without any basis to support an actual dispute.  Assurant speculates that there is a risk of it being sued because of IV's prior lawsuits.  (Compl. at ¶¶ 51-53.)  Assurant further remarks that IV sent Notice Letters to the defendants in those other cases as a purported basis for establishing a case or controversy.  (Compl. at ¶¶ 55-56.)  It then speculates that "[o]n information and belief, before those letters each of those defendants received similar correspondence from Mr. Joroff and/or another individual tasked with 'licensing' IV's patent portfolio."  (Compl. at ¶ 57.)  Assurant ignores the fact that IV did not send any such Notice Letter to Assurant and it cites to no evidence to support its speculation that Mr. Joroff contacting it regarding a licensing opportunity was a precursor to a lawsuit for patent infringement.  Jurisdiction is not created merely on the basis that a party speculates that a patent poses a risk of infringement.  *Prasco,* 537 F.3d at 1339 ("[A] case or controversy must be based on a real and immediate injury or threat of future injury that is caused by the defendants—an objective standard that cannot be met by a purely subjective or speculative fear of future harm.")

        2.       Governing Law Shows There Is No Case Or Controversy

The question in a declaratory judgment case "is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."

*Allied Mineral Prods. v. OSMI, Inc.*, 870 F.3d 1337, 1339 (Fed. Cir. 2017) (*quoting MedImmune*, 549 U.S. at 127).) While a court may consider prior litigation when assessing the totality of circumstances, the fact that a patent owner has previously filed infringement suits against other parties does not, in and of itself, meet the minimum standard discussed in *MedImmune*. *Innovative Therapies, Inc. v. Kinetic Concepts, Inc.*, 599 F.3d 1377, 1382 (Fed. Cir. 2010) (*citing Prasco, LLC v. Medicis Pharm. Corp.*, 537 F.3d 1329, 1341 (Fed. Cir. 2008) (noting that "prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy," but concluding that no controversy was shown). "The specific facts of each case must be considered, in deciding whether a declaratory action is warranted." *Id*.

The Supreme Court clarified in *MedImmune* that "an actual controversy can exist even when there is no apprehension of suit, but it did not change the bedrock rule that a case or controversy must be based on a *real* and *immediate* injury or threat of future injury *that is caused by the defendants*—an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco,* 537 F.3d at, 1339 (emphasis in original.) The Federal Circuit has held that instead of "a purely subjective fear or the mere existence of a potentially adverse patent alone, the alleged injury at the root of most justiciable declaratory judgment controversies in the patent context is a restraint on the free exploitation of non-infringing goods, or an imminent threat of such restraint." *Id*. A patent holder can cause an actual injury in multiple ways, such as "by creating a reasonable apprehension of an infringement suit, demanding the right to royalty payments, or creating a barrier to the regulatory approval of a product that is necessary for marketing." *Id.* (internal citations omitted.) There have been no such restraints, threats of any restraints, nor any other injuries caused by IV, therefore no actual controversy exists.

Moreover, this case is unlike typical cases where the Federal Circuit finds that a case or controversy exists. For example, this case is unlike *SanDisk*, where prior to the filing of the declaratory judgment action the patentee presented the DJ plaintiff with 'a detailed presentation which identified, on an element-by-element basis,' showing the manner in which the patentee believed that the plaintiff's products infringed specific claims of the patentee's patents. *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372, 1382 (Fed. Cir. 2007). Moreover, the patentee in *SanDisk* frequently referred to the plaintiff's ongoing infringement of its patents and presented the plaintiff with reverse engineering reports for certain of the plaintiff's products which showed a detailed infringement analysis. *Id*.

None of that happened here. Instead, the evidence shows there were only cordial discussions that IV believed would lead to a license agreement. Indeed, it was Assurant's negotiating representative, Mr. Huber, who requested that IV provide MFN terms in a revised, draft license agreement, and even suggested other potential companies in the industry that may want to license IV's patent portfolio. (Ex. 5 [February 15, 2024 e-mail from B. Huber to S. Joroff].)

Given the nature of the parties' communications, it came as quite a surprise when just two days after IV sent to Mr. Huber the revised license agreement that he had requested, Assurant's counsel (who had not previously been involved in the negotiations) sent a short e-mail to IV claiming there was a patent dispute between the parties right before it filed this declaratory judgment action. (*Supra* at 5-6; *see also* Ex. 7 [March 15, 2024 e-mail from M. Howell to S. Joroff].)

Because the only basis for a claim or controversy here is Assurant's speculation, there is no justiciable cause of action and the Complaint should be dismissed. *Prasco*, 537 F.3d at 1339.

12

## V. CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

Dated: May 8, 2024                                            Respectfully submitted,

                                                              FARNAN LLP

Of Counsel:

                                                               /s/ Brian E. Farnan
Jonathan K. Waldrop                                           Brian E. Farnan (Bar No. 4089)
Darcy L. Jones                                                Michael J. Farnan (Bar No. 5165)
Marcus A. Barber                                              919 N. Market St., 12th Floor
Heather S. Kim                                                Wilmington, DE 19801
John Downing                                                  Tel: (302) 777-0300
ThucMinh Nguyen                                               bfarnan@farnanlaw.com
KASOWITZ BENSON TORRES LLP                                    mfarnan@farnanlaw.com
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065                                      *Attorneys for Defendants*
Tel. (650) 453-5170                                           *Intellectual Ventures I LLC, Intellectual*
Fax. (650) 362-9302                                           *Ventures II LLC, Callahan Cellular L.L.C.*
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
HKim@kasowitz.com
JDowning@kasowitz.com
TNguyen@kasowitz.com


Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com