# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASSURANT, INC.,<br><br>*Plaintiff,*<br><br>v.<br><br>INTELLECTUAL VENTURES I LLC and INTELLECTUAL VENTURES II LLC, and CALLAHAN CELLULAR L.L.C.,<br><br>*Defendants.* | C.A. No. 24-cv-344-GBW |

## DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS

Dated: June 25, 2024

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC*
*Intellectual Ventures II LLC*
*Callahan Cellular L.L.C.*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
Heather S. Kim
John Downing
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP
333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel. (650) 453-5170
Fax. (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com

HKim@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com

## **TABLE OF CONTENTS**

I. INTRODUCTION .................................................................................................................. 1

II. ARGUMENT ......................................................................................................................... 5

      A.     IV Proposed A Business Opportunity, Not A Threat Of Litigation ................................................................................................................. 5

      B.     The Totality Of The Circumstances Shows There Was No Imminent Dispute ........................................................................................... 8

III. CONCLUSION ................................................................................................................... 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Element Six United States Corp. v. Novatek Inc.*,
    No. 14-0071, 2014 U.S. Dist. LEXIS 192183 (S.D. Tex. June 9, 2014) ......................... *passim*

*Geospan Corp. v. Pictometry Int'l Corp.*,
    598 F. Supp. 2d 968 (D. Minn. 2008) ....................................................................................9

*Microsoft Corp. v. SynKloud Techs., LLC*,
    484 F. Supp. 3d 171 (D. Del. 2020) .................................................................................5, 10

*SanDisk Corp. v. STMicroelectronics, Inc.*,
    480 F.3d 1372 (Fed. Cir. 2007) ..............................................................................................8

Defendants Intellectual Ventures I LLC, Intellectual Ventures II LLC, and Callahan Cellular L.L.C. (collectively "Defendants" or "IV") respectfully submit Defendants' Reply Brief in support of their Motion to Dismiss the Complaint filed by Plaintiff Assurant, Inc. ("Assurant") for declaratory judgment (D.I. 13, 14.)

## I.  INTRODUCTION

The record clearly shows that IV proposed that Assurant engage with IV in a portfolio licensing business opportunity, and that IV never threatened Assurant with litigation. In fact, notwithstanding Assurant's hyperbole and exaggerations[1] to the contrary, the evidence demonstrates that IV even went so far as to assure Assurant that it was not a target, stating that IV's "**program is not designed to single out Assurant; instead, it offers an opportunity for the efficient acquisition of rights to our patented technologies**." (D.I. 15-1 at 3-4 (emphasis added).)

As illustrated in the chart below, the entirety of the discussions between the parties shows that IV never threatened litigation, and that Assurant's complaints relate to information that Assurant itself requested that IV provide after the parties met on February 6, 2024, and compiled a "to-do" list for exchanging additional information.

| Date | Participants | Key Points In E-Mails |
|---|---|---|
| 1/3/2024 (D.I. 15-1 at 4-5) | S. Joroff to S. Garber, A. Cassada | "… reaching out to initiate a dialogue…." "Presently, our portfolio boasts over 7,000 active patents . . . [that] cover some of the technology integral to Assurant[]…." |

---

[1] Assurant alternately tries to trivialize the motion to dismiss or mischaracterize the interactions between the parties as a mafia shakedown – even going so far as paraphrasing language in an e-mail from IV to quote the Godfather, stating IV "made Assurant an 'offer it can't refuse.'" (Opp'n at 1.) Assurant's hyperbole extended to calling IV "notorious" (Opp'n at 1), stating "IV's threats were accompanied by saber-rattling" (Opp'n at 2), and asserting that "Assurant did not view IV's correspondence as a business proposal" (Opp'n at 7) – despite Assurant's requests for additional information and materials and cordial exchanges between the parties.

| 1/12/2024 (D.I. 15-1 at 3-4) | S. Joroff to S. Garber, A. Cassada | "…following up on my previous communication …."<br>"…emphasize that this is not a selective initiative; all companies within the financial services sector are being presented with these terms."<br>"This is not an offer that can be refused; rather, it is a crucial step to ensure compliance with IV's patent portfolio."<br>"…understand the importance of protecting Assurant's operations and intellectual property rights . . . **The program is not designed to single out Assurant; instead, it offers an opportunity for the efficient acquisition of rights to our patented technologies**." |
|---|---|---|
| 1/18/2024 (D.I. 15-1 at 3) | S. Garber to S. Joroff, A. Cassada, B. Huber | "Thank you for the follow-up. Neither Alyssa nor I received your original e-mail so we apologize for the lack of response."<br>"As this looks like a patent matter, I've copied my colleague, Ben Huber." |
| 1/18/2024 (D.I. 15-1 at 2-3) | S. Joroff to S. Garber, A. Cassada, B. Huber | "… thank you for forwarding to Ben."<br>"I look forward to hearing from you. In my experience, an introductory meeting is the best way to get started. **I'm happy to share** some material in advance of the meeting." |
| 1/22/2024 (D.I. 15-1 at 2) | S. Joroff to B. Huber | "I have found it's a productive use of both of our time to have a 30-minute conversation." |
| 1/23/2024 (D.I. 15-1 at 1-2) | B. Huber to S. Joroff | "Thank you for your message. I'm unavailable this week, but have used the Calendly link to schedule some time for us next Thursday. . . ."<br>Based on your message, it seems like there may be some materials you can share with me. If so, **I would appreciate you sending those materials to me in advance of our discussion**." |
| 1/23/2024 (D.I. 15-1 at 1) | S. Joroff to B. Huber | "Thank you for your response and for setting up a meeting for us."<br>"Attached are 3 files…. The material covers IV, the IV patent portfolio, the relevance of the portfolio to insurance companies like Assurant and the scope of the IV patent licensing program."<br>"**I'm happy to answer any questions** you may have about the material when we talk." |
| 2/6/2024 (D.I. 15-5 at 3) | S. Joroff to B. Huber | "**Thanks for taking the time to meet with us today**."<br>"The summary of our to-do's:<br>1. **IV to send more specific details about technologies being used** that are relevant to the IV patent portfolio.<br>2. IV to send a draft license Agreement.<br>3. Assurant to review . . .<br>4. Assurant to provide IV with feedback . . ."<br>"IV to contact Asurion." |
| 2/12/2024 (D.I. 15-5 at 2) | S. Joroff to B. Huber | "Attached are two files. One is a PDF with targeted material on Assurant's use of infringing technologies. Please see pages 21-23."<br>"The other file is . . . a draft patent license. This version does not include the MFN clause because it would slow the process down. |

2

| | | |
|---|---|---|
| | | When you're ready to see the MFN, let me know. I'll have it prepared ASAP. |
| 2/15/2024 (D.I. 15-5 at 2) | B. Huber to S. Joroff | "I've received both files and am in the process of reviewing them. **Please send the MFN materials** so I can review them in connection with the draft license." |
| 2/15/2024 (D.I. 15-5 at 1) | S. Joroff to B. Huber | "**Thanks for confirming**. I'll send the MFN language as soon as possible." |
| 3/13/2024 (D.I. 15-5 at 1) | S. Joroff to B. Huber | "Attached is a draft Agreement with the MFN language. The availability of an MFN to financial services licensees will not be indefinite so I recommend *that if you plan to take a license*, you do so sooner than later." |
| 3/15/2024 (D.I. 15-7 at 1) | M. Howell to B. Huber | "We have been retained by Assurant as counsel to help it in connection with its patent dispute with [IV]. . . . we do not believe that Assurant has infringed . . . Assurant does not intend to take a license at this time." |

In fact, before Assurant requested that IV send Assurant targeted materials, it is clear that the presentations IV sent Assurant were simply generic presentations. None of them were targeted at Assurant, none of them threatened litigation, and none of them issued any demands to Assurant. (D.I. 15-2 – 15-4.) And only at Assurant's request did IV send an e-mail on February 12, 2024, attaching two files that fulfilled IV's enumerated commitments from the parties' to-do list. *Id*. at 2. Assurant's Opposition ignores that it was **Assurant** that requested these materials.

And Assurant ignores that it also requested that IV send the MFN ("most-favored nation") materials so that Mr. Huber could review them in conjunction with the generic, draft license agreement that IV sent to Assurant on February 6, 2024. *Id*. at 1.

As discussed below, the circumstances here are analogous to those faced by the Court in *Element Six United States Corp. v. Novatek Inc.*, No. 14-0071, 2014 U.S. Dist. LEXIS 192183 (S.D. Tex. June 9, 2014). In *Element Six* the Court held there was no case or controversy – despite an initial cease and desist letter asserting there may be patent infringement – because the declaratory judgment ("DJ") plaintiff asked the patent owner to identify the allegedly infringed

3

patents and provide an infringement analysis, which the patent owner then did. *Id*. at *4-5. The *Element Six* Court held that the later-arising information did not contribute to jurisdiction because the DJ plaintiff requested it. *Id*. at *13. Similarly here, the only information IV provided that was focused specifically on Assurant, was provided at Assurant's request. (D.I. 15-5 at 2-3.)

The record shows that both before and after Assurant's requests, all of the parties' communications were replete with cordial language, such as the parties thanking one another for their communications, IV's representative stating he was "happy to answer any questions," Assurant requesting additional materials and MFN language, and IV politely responding and providing the requested information and documents. (D.I. 15-1, 15-5.) There were no demands, aggressive language or litigation threats – explicit or implied.

Nevertheless, on March 15, 2024, two days after IV sent the updated, proposed license agreement incorporating the requested MFN language, counsel for Assurant contacted IV to assert there was a patent dispute, stated that Assurant had not "infringed on any of the patents that Intellectual Ventures has claimed read on technology that Assurant allegedly uses," and that Assurant did not intend to take a license. (D.I. 15-7.) Assurant filed its complaint for declaratory judgment the same day, despite the facts that IV: (1) made no claims that its patents read on Assurant technology, (2) had not accused Assurant of patent infringement, (3) provided no claim charts alleging such infringement, (4) made no demands on Assurant, and (5) had not threatened patent infringement litigation against Assurant. (D.I. 1.) It now appears the bad actor was actually Assurant, as it led IV to believe it was interested in obtaining a license to IV's patent portfolio when it was actually trying to engineer a scenario where it could sue IV for declaratory judgment. Assurant's efforts were unsuccessful; there is no case or controversy and the Complaint should be dismissed in its entirety.

4

II.     **ARGUMENT**

      A.     **IV Proposed A Business Opportunity, Not A Threat Of Litigation**

IV's communications with Assurant were always cordial and were focused on a potential business relationship between the parties. IV never threatened to sue Assurant nor did it create a case or controversy, which only exists when "the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'" *Microsoft Corp. v. SynKloud Techs., LLC*, 484 F. Supp. 3d 171, 176 (D. Del. 2020) (*quoting MedImmune, Inc. v. Genentech, Inc*., 549 U.S. 118, 127 (2007)). Contrary to the assertion made by Assurant's counsel immediately prior to filing this action, there was no patent dispute between the parties. (D.I. 15-7 at 1.) To constitute a case or controversy, such a dispute "must be 'definite and concrete, touching the legal relations of parties having adverse legal interests;'" a "subjective or speculative fear of future harm" is insufficient. *Microsoft*, 484 F. Supp. 3d at 176-77 (*quoting Arris Grp., Inc. v. British Telecomm. PLC*, 639 F.3d 1368, 1373 (Fed. Cir. 2011); *Prasco, LLC v. Medicis Pharm. Corp*., 537 F.3d 1329, 1335 (Fed. Cir. 2008).) Those circumstances did not exist when Assurant filed this lawsuit.

IV reached out to Assurant offering a business opportunity to obtain a license to its "portfolio [of] over 7,000 active patents . . . [that] cover some of the technology integral to Assurant[]." (D.I. 15-1 at 4-5.) Assurant twists this offer into a threat of litigation, claiming it was an accusation of infringement. (Opp'n at 2, 5-6.) Indeed, this is one of two e-mails that Assurant argues were accusations of infringement – the e-mails dated January 3, 2024, and February 12, 2024. (Opp'n at 2, 6.) Neither e-mail was an accusation of infringement nor a threat of litigation. (D.I. 15-1 at 5; D.I. 15-5 at 2.) IV's statement that its extensive patent portfolio included patents that were integral to Assurant's operations was merely a business pitch to show

5

that licensing that portfolio would be a valuable business opportunity for Assurant. (D.I. 15-1 at 5.) The fact that IV followed up with another e-mail over a week later, on January 12th, was not a threat, but instead reflected the realization that IV's initial e-mail may have been overlooked or not received; an action that was justified by Ms. Garber's responsive statement that neither she nor the other Assurant recipient had received the original e-mail. (D.I. 15-1 at 3-4.)

      The other e-mail to which Assurant cites as a supposed accusation of infringement is the February 12, 2024 e-mail that Mr. Joroff sent to Mr. Huber as a follow-up to the post-meeting "to-do" list sent in an e-mail dated February 6, 2024. (Opp'n at 2, 6; D.I. 15-5 at 2-3.) The first item on that to-do list was "IV to send more specific details about technologies being used that are relevant to the IV patent portfolio." (D.I. 15-5 at 3.) In fulfillment of that task, Mr. Joroff's February 12th e-mail attached two files, a draft license agreement and, as requested, "a PDF with targeted material on Assurant's use of infringing technologies. Please see pages 21-23." *Id*. at 2. While the sentence inartfully used the word "infringing,"[2] it was sent in response to the agreed "to-do" list resulting from the video-conference between the parties – not as an accusation of infringement nor as a threat of litigation. Indeed, the cited pages – which are the only substantive changes from the generic licensing presentation that IV sent to Assurant on January 23rd (D.I. 15-1 at 1; D.I. 15-3) – do not accuse Assurant of infringing any patents and do not threaten litigation. (D.I. 15-6 at 21-23.) The "targeted" material merely identified dozens of patents that relate to technology that may be relevant to Assurant's business operations in an attempt to show Assurant the value of IV's patent portfolio and its relevance to Assurant. *Id*. This reinforces the point that all of IV's outreach was focused on potential business opportunities between the parties rather than litigation.

---

[2] It should be noted that Mr. Joroff is a businessman, not a lawyer.

Assurant's Opposition – and the Complaint itself – ignores the facts showing that Assurant was engaged in mutually beneficial licensing discussions. During those discussions, Assurant repeatedly initiated requests for materials and information, sought a revised license agreement including MFN terms, and scheduled the only meeting between the parties. (D.I. 15-1, D.I. 15-5.) The behavior of both parties was cordial throughout the discussions – right up until Assurant severed negotiations and filed this lawsuit. (*Supra* at 1-4; *see also* D.I. 14 at 8-10.)

The holding in *Element Six* informs the situation here. The *Element Six* Court held that there was no case or controversy and granted a motion to dismiss. In the patent owner ("Novatek") sent a cease-and-desist letter based on a visual inspection of Element Six's ("E6") products and seeking additional information about those products so it could determine whether there was patent infringement. *Id*. at *3-4. E6 did not provide the additional information that Novatek requested, but it did ask Novatek to identify a list of patents that Novatek believed were infringed so that E6 could conduct its own investigation; E6 also asked for an infringement analysis from Novatek, which Novatek provided. *Id*. at *4-5.

The *Element Six* Court noted that "[t]o demonstrate an affirmative act, 'more is required than a communication from a patent owner to another party, merely identifying its patent and the other's product line.' [But] [h]ow much more is required is determined on a case-by-case analysis." *Id*. at *9 (*quoting 3M Co. v. Avery Dennison Corp.*, 673 F.3d 1372, 1376 (Fed. Cir. 2012).) Importantly, the *Element Six* Court noted that Novatek only identified the patents that it believed were infringed and provided additional information after E6 requested it, therefore that information did not contribute to declaratory judgment jurisdiction. *Id*. at *13.

Thus, the Court's focus was on the original letter, which it determined was not a demand or accusation and was not sufficient to create a case or controversy; it merely sought more

7

information about potential infringement and Novatek did not subsequently escalate the potential dispute. *Id*. at *13-14. E6's circumstances are similar to those here in that IV only provided a targeted presentation regarding potentially "infringing technologies" after a meeting in which IV agreed to provide such information (and immediately after which Assurant requested additional MFN language for a draft license). (D.I. 15-5 at 2; *see also supra* at 2-4.)

The *Element Six* Court analyzed Novatek's conduct in comparison to Federal Court cases where declaratory judgment jurisdiction was found and determined that Novatek did not perform the requisite affirmative act as was found in those cases, such as *SanDisk Corp. v. STMicroelectronics, Inc*., 480 F.3d 1372 (Fed. Cir. 2007) – a case cited by Assurant in its Opposition. (*Id*.; Opp'n at 10.) The Court noted that in *SanDisk*, the defendant's vice-president gave a four-hour presentation at a licensing meeting, "including a detailed analysis of how the plaintiff's products allegedly infringed." *Id*. at *13 (*citing SanDisk*, 480 F.3d at 1380). In the instant case, there were no accusations, merely the provision of requested information as was the case in *Element Six*. There certainly were no lengthy presentations analyzing potential infringement; in fact the only targeted information regarding Assurant – as opposed to a generic presentation – were three pages added to the generic presentation that generally provided information regarding technologies Assurant uses and dozens of patents that could be useful for those technologies. (D.I. 15-6 at 21-23.) IV sent no claim charts or analysis of potential infringement; instead, there was only a focus on the potential business opportunities between the parties. There was no affirmative act that would give rise to a case or controversy; the Complaint should be dismissed.

**B.     The Totality Of The Circumstances Shows There Was No Imminent Dispute**

Contrary to Assurant's arguments, the totality of the circumstances demonstrates that there is no case or controversy in the instant case. (Opp'n at 10-12.) IV's communications were always

8

framed as a potential business opportunity; it made no demands or threats of suing Assurant. (*Supra* at 1-4; *see also* D.I. 14 at 8-12.) IV contacted Assurant to discuss a potential license and – at Assurant's request – sent generic presentations regarding its patent portfolio and even went so far as to explicitly inform Assurant that "[t]he program is not designed to single out Assurant; instead, it offers an opportunity for the efficient acquisition of rights to our patented technologies." (D.I. 15-1 at 1-4.) After the parties met during a brief video-conference, IV memorialized the meeting with a short list of "to-dos;" to fulfill IV's responsibilities, IV "sen[t] more specific details about technologies being used" and a draft license agreement. (D.I. 15-5 at 2-3.) The presentation focusing on Assurant was virtually identical to the generic banking presentation that IV previously provided other than three pages of material focused on technologies specifically used by Assurant. (D.I. 15-6 at 21-23.) The targeted presentation did not include specific claim charts relating to any patents and it did not accuse Assurant of infringing. (D.I. 15-6.) More significantly, it did not contain any threats that IV would sue Assurant for patent infringement if it did not agree to a license. *Id*. As discussed above at __, an affirmative act requires more than a communication "merely identifying its patent and the other's product line." *Element Six*, 2014 U.S. Dist. LEXIS 192183 at *9 ((quoting *3M*, 673 F.3d at 1376); *see also Geospan Corp. v. Pictometry Int'l Corp.*, 598 F. Supp. 2d 968, 971 (D. Minn. 2008) (holding there was no substantial controversy where the DJ defendant had not demonstrated an intent to litigate against the DJ plaintiff, had not accused the DJ plaintiff of infringement, and had not demanded licensing fees.)

Assurant appeared to be meaningfully engaged in the business discussions during the relatively short period of time that the parties interacted; that it scheduled a meeting and repeatedly requested information, including MFN terms to be added to the proposed license agreement, confirms that fact. (D.I. 15-1 at 1-2; D.I. 15-5 at 2.) It now seems that Assurant was stringing IV

along in an unsuccessful attempt to create circumstances under which it could file a declaratory judgment action. Indeed, in the Opposition, Assurant now asserts that it "did not view IV's correspondence as a business proposal," despite the apparent cordial nature of the relatively limited interactions between the parties and Assurant's repeated requests for information and materials. (Opp'n at 7.) Although IV failed to make requisite threats of litigation or take other actions "of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," Assurant still filed the instant action. *Microsoft*, 484 F. Supp. 3d at 176. The Complaint should be dismissed.

### III.  CONCLUSION

For the foregoing reasons and those discussed in the Motion to Dismiss (D.I. 14), the Complaint should be dismissed in its entirety.

Dated: June 25, 2024

Respectfully submitted,

FARNAN LLP

 */s/ Brian E. Farnan*
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Tel: (302) 777-0300
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

Attorneys for Defendants
*Intellectual Ventures I LLC*
*Intellectual Ventures II LLC*
*Callahan Cellular L.L.C.*

Of Counsel:

Jonathan K. Waldrop
Darcy L. Jones
Marcus A. Barber
John Downing
Heather S. Kim
ThucMinh Nguyen
KASOWITZ BENSON TORRES LLP

333 Twin Dolphin Dr., Suite 200
Redwood Shores, CA 94065
Tel. (650) 453-5170
Fax. (650) 362-9302
JWaldrop@kasowitz.com
DJones@kasowitz.com
MBarber@kasowitz.com
JDowning@kasowitz.com
HKim@kasowitz.com
TNguyen@kasowitz.com

Paul G. Williams
KASOWITZ BENSON TORRES LLP
1230 Peachtree Street, N.E., Suite 2445
Atlanta, Georgia 30309
Tel. (404) 260-6080
Fax. (404) 260-6081
PWilliams@kasowitz.com