## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ASSURANT, INC.,<br><br>Plaintiff,<br><br>v.<br><br>INTELLECTUAL VENTURES I LLC,<br>INTELLECTUAL VENTURES II LLC, and<br>CALLAHAN CELLULAR L.L.C.,<br><br>Defendants. | Civil Action No. 24-344-GBW |

---

Steven J. Fineman, Kelly E. Farnan, Sara M. Metzler, RICHARDS, LAYTON & FINGER, P.A., Wilmington, DE; Keith E. Broyles, Matthew W. Howell, Thomas Finch, Carter E. Babaz, ALSTON & BIRD LLP, Atlanta, GA.

*Counsel for Plaintiff*

Brian E. Farnan, Michael J. Farnan, FARNAN LLP, Wilmington, DE; Jonathan K. Waldrop, Darcy L. Jones, Marcus A. Barber, Heather S. Kim, John Downing, ThucMinh Nguyen, KASOWITZ BENSON TORRES LLP, Redwood Shores, CA; Paul G. Williams, KASOWITZ BENSON TORRES, LLP, Atlanta, GA.

*Counsel for Defendants*

## <u>MEMORANDUM OPINION</u>

April 28, 2026
Wilmington, Delaware

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE

Pending before the Court is Defendants Intellectual Ventures I LLC ("IV I"), Intellectual Ventures II LLC ("IV II") (collectively, "IV"), and Callahan Cellular L.L.C.'s ("Callahan") (together with IV, "Defendants") Motion to Dismiss Plaintiff Assurant, Inc.'s ("Plaintiff" or "Assurant") Complaint Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 28 U.S.C. § 2201 ("Motion to Dismiss" or "Motion") (D.I. 13), which has been fully briefed (D.I. 14; D.I. 18; D.I. 20). For the reasons set forth below, the Court denies Defendants' Motion to Dismiss.

I. BACKGROUND

A. The Parties

Plaintiff, a provider of risk management solutions in various sectors, is a corporation organized under the laws of Delaware, with its principal place of business in Atlanta, Georgia. D.I. 1 ¶¶ 29-30.

IV I and IV II are Delaware limited liability companies, with their principal place of business in Bellevue, Washington. *Id.* ¶¶ 8-9. IV I is the owner of U.S. Patent Nos. 7,949,785 (the "'785 Patent") and 7,712,080 (the "'080 Patent"). *Id.* ¶¶ 6-7. IV II is the owner of U.S. Patent Nos. 8,332,844 (the "'844 Patent") and 7,314,167 (the "'167 Patent") (collectively, the "IV Patents").

Callahan is also a Delaware limited liability company, with its principal place of business in Wilmington, Delaware. *Id.* ¶ 10. Callahan is the owner of U.S. Patent No. 10,567,391 (the "'391 Patent") (together with the IV Patents, "the DJ Patents"). *Id.* ¶¶ 2-3.

B. Relevant Allegations and Evidence Regarding the Motion to Dismiss

On January 3, 2024, IV's Vice President of Licensing, Steve Joroff ("Joroff") contacted Plaintiff to discuss "intellectual property and licensing matters." *Id.* ¶ 39. In the email, Joroff

2

stated that he led a "team responsible for negotiating patent license agreements, particularly within the realm of banking, insurance, and financial services." *Id.* Joroff also proposed an "initial discussion [to] cover IV's expansive patent portfolio and its relevance to Assurant's operations." *Id.* On January 12, 2024, having received no response, Joroff sent a follow-up "urgent" email emphasizing "the pressing need for a patent license agreement with Assurant." *Id.* ¶ 42. In advance of an introductory meeting, IV provided Plaintiff with a presentation titled "Banking Tech Presentation," which identified certain software platforms allegedly used by Plaintiff and specific claims of the DJ Patents that IV contended covered those platforms. *Id.* ¶ 44. Specifically, IV claimed that the Docker platform practices Claim 7 of the '844 Patent; the Kubernetes platform practices Claim 30 of the '785 Patent; the Zelle® platform practices Claim 43 of the '167 Patent; and the 3DSecure2 platform practices Claim 18 of the '391 Patent. *Id.* After the meeting, on February 12, 2024, IV emailed an additional presentation entitled, "IFF [("Invention Investment Funds")] Licensing Opportunity: Assurant," which alleged that Plaintiff's use of Apache Hadoop infringed the '080 Patent and provided an overview of IV's litigation history defending its patent portfolio. *Id.* ¶ 48.

On March 13, 2024, IV circulated a draft license agreement to Plaintiff. *Id.* ¶ 49. IV also sent Plaintiff a document entitled, "Intellectual Ventures Financial Services Licensing Program," which indicated that IV developed pricing tiers based on potential damages and was actively protecting its intellectual property rights by initiating various litigations. *Id.* ¶ 58. On March 15, 2024, prior to filing its complaint, Plaintiff informed IV that it does not infringe the DJ Patents nor does Plaintiff intend to take a license. *Id.* ¶ 61.

On March 15, 2024, Plaintiff commenced this action against Defendants, seeking a declaratory judgment that it does not infringe the DJ Patents directly or indirectly. *See id. generally.* On May 8, 2024, Defendants filed the instant Motion to Dismiss. (D.I. 13).

## II.    LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction under Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) permits the dismissal of an action for "lack of subject-matter jurisdiction." A motion brought under Fed. R. Civ. P. 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *See Constitution Party of Pa. v. Aichele,* 757 F. 3d 347, 357-58 (3d Cir. 2014). "In reviewing a facial attack, the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff." *Id.* at 358 (cleaned up). In reviewing a factual attack, the court may consider evidence outside the pleadings. *See Mortensen v. First Fed. Sav. Loan Ass'n,* 549 F. 2d 884, 891 (3d. Cir. 1997). Here, Defendants' Motion presents a facial attack because "they focus on the allegations of in [Plaintiff's Complaint] and why those allegations assertedly do not give rise to subject matter jurisdiction." *In re Mobile Telecommunications Techs., LLC,* 247 F. Supp. 3d 456, 459 (D. Del. 2017).[1]

---

[1] Defendants submit a declaration (D.I. 15) attaching several exhibits, not to contest the factual accuracy of Plaintiff's allegations, but to advance their position that the Complaint fails to establish subject matter jurisdiction. *See generally TSMC Tech., Inc. v. Zond, LLC,* 2015 WL 661364, at *3 & n.4 (D .Del. Feb 13, 2015) (determining that defendant's motion to dismiss for lack of subject matter jurisdiction was facial attack, despite references in defendant's briefing to documents outside of pleadings). Moreover, the Court may consider the exhibits because they are also reference in, or relied upon by, the Complaint. *See* Start Man Furniture, LLC., No. 20-10553, 2023 WL 2717662, at *3 (Bankr. D. Del. Mar. 30, 2023) ("Courts may also consider documents extraneous to the pleadings if such documents are "integral to or explicitly relied upon in the complaint.") (internal citations omitted).

4

## B.   Declaratory Judgment Jurisdiction

The Declaratory Judgment Act ("Act") requires that a "case of actual controversy" exist between the parties before a federal court may exercise jurisdiction.  28 U.S.C. § 2201(a).  In determining whether there is subject matter jurisdiction over declaratory judgment claims, a court should ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between the parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment," *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (cleaned up); *see also Prasco, LLC v. Medicis Pharm. Corp.*, 537 F. 3d 1329, 1335-36 (Fed. Cir. 2008).  A case or controversy must be "based on a real and immediate injury or threat of future injury that is caused by defendants – an objective standard that cannot be met by a purely subjective or speculative fear of future harm." *Prasco, LLC*, 537 F. 3d at 1339.  Thus, in the patent context, "jurisdiction generally will not arise merely on the basis that a party learns of existence of a patent owned by another or even perceives such a patent to pose a risk of infringement, without some affirmative act by the patentee." *Id.* (cleaned up).  When the conduct of the patentee can be "reasonably inferred as demonstrating intent to enforce a patent" against the declaratory judgment plaintiff, subject matter jurisdiction will arise, even when that intent is demonstrated only implicitly. *Hewlett- Packard Co. v. Acceleron LLC,* 587 F. 3d 1358, 1353 (Fed. Cir. 2009).

The Federal Circuit has explained that an actual controversy requires "an injury in fact traceable to the patentee," which exists only if plaintiff meets the *MedImmune* standard by plausibly alleging "both (1) an affirmative act by the patentee related to the enforcement of his patent rights and (2) meaningful preparation to conduct potentially infringing activity." *Assoc. for*

*Molecular Pathology v. U.S. Patent & Trademark Office*, 689 F. 3d 1303, 1318 (Fed. Cir. 2012).[2] To find an affirmative act, "more is required than 'a communication from patent owner to another party merely, identify its patent and the other party's product line.'" *3M Co. v. Avery Dennison Corp.*, 673 F. 3d 1372, 1378-79 (Fed. Cir. 2012) (quoting *Hewlett-Packard Co.*, 587 F. 3d at 1362). On the other end of the spectrum is an allegation of explicit infringement, which shows "there is, necessarily, a case or controversy adequate to support declaratory judgment jurisdiction." *Hewlett-Packard Co.*, 587 F. 3d at 1362 (internal citations omitted). The scenarios that fall in between require case-by-case analysis, and the objective actions of the patentee are the subject of the inquiry. *See id.* A patentee need not explicitly threaten to sue or demand a license, but its actions must give a reason to believe that it is asserting its right under the patents. *Id.* at 1362-63.

A decision as to whether an actual controversy exists in the context of a patent declaratory judgment claim "will necessarily be fact specific and must be made in consideration of all the relevant circumstances." *W.L. Gore & Assocs., Inc. v. AGA Med. Corp.*, 2012 WL 924978, at *4 (D. Del. Mar. 19, 2012) (citing *MedImmune*, 549 U.S. at 127); *Asia Vital Components Co., Ltd. v. Asetek Danmark A/S*, 837 F. 3d 1249, 1252 (Fed. Cir. 2016); *Streck, Inc. v. Research & Diagnostic Sys., Inc.*, 665 F. 3d 1269, 1281 (Fed. Cir. 2012) (cleaned up). The burden is on the party asserting declaratory judgment jurisdiction to establish than an Article III case or controversy existed at the time that the claim for declaratory relief is filed and that has continued since. *See Danisco U.S. Inc. v. Novozymes A/S*, 744 F.3d 1325, 1329 (Fed. Cir. 2014).

---

[2] The "meaningful preparation" prong is satisfied when a party has already engaged in the actual manufacture or sale of the potentially infringing product or when the party has meaningfully prepared to produce a potentially infringing product. *See Cat Tech LLC v. TubeMaster, Inc.*, 528 F. 3d 871, 881 (Fed. Cir. 2008). Neither party address this prong in its briefing; however, it is readily satisfied because Plaintiff is already engaged in conduct that Defendants allege may infringe their patents.

6

## III.   DISCUSSION

Defendants move to dismiss Plaintiff's Complaint in its entirety under Fed. R. Civ. P. 12(b)(1) contending that this Court lacks subject matter jurisdiction because no case or controversy exists. D.I. 14 at 8. Defendants contend that no action has been taken that would indicate the existence of any dispute, and that controlling law establishes the absence of a justiciable controversy. *Id.* Plaintiff responds that it has adequately pled an actual case or controversy between the parties arising out of the Defendants' express infringement allegations, affirmative acts to enforce Defendants' patent rights and pattern of litigation against similarly situated entities. D.I. 18 at 5-7. While the Court will address each basis for jurisdiction, it adheres to the requirement that, ultimately, a decision must be made as to whether "the totality of the circumstances establishes a justiciable controversy." *Danisco U.S. Inc.*, 744 F.3d at 1327.

Defendants' argument turns largely on what they claim they did not do: they did not threaten Plaintiff with litigation, did not "outline any specific infringement theory," and did not send a notice letter. D.I. 14 at 8, 10; D.I. 20 at 1. Defendants characterize the license negotiations with Plaintiff as "cordial negotiations . . . consisting of a few e-mail exchanges and one relatively short video-conference" and emphasize that the nature of the discussions "was not threatening to sue Assurant." *Id* at 8. Plaintiff responds that "IV is a notorious non-practicing entity with a pattern of aggressive – *not* cordial – tactics" and "followed the same strategy against Assurant as it has with dozens of other targets." D.I. 18 at 2. Plaintiff further claims that IV "identified the Patents-in-Suit and accused products," "repeatedly referenced IV's extensive litigation history, including its history of asserting the Patents-in-Suit against the parties using the same technology" as Plaintiff, and "indicated that future litigation was planned." *Id.* at 7.

The Court finds that Plaintiff has sufficiently alleged that Defendants engaged in affirmative acts directed toward Plaintiff. In January 2024, Defendants contacted Plaintiff by

email, stating that they were reaching out to discuss a license relevant to Plaintiff's operations. *See* D.I. 15-1. When Defendants did not receive a response, they sent an "urgent" follow-up communication to Plaintiff nine days later. *Id.* The parties' discussions continued over the ensuing month, during which Defendants provided Plaintiff with documents asserting that Defendants' patents and specific patent claims were relevant to products used by Plaintiff. *See* D.I. 15-2; D.I. 15-6. In addition to a draft license agreement, Defendants also provided documentation detailing their patent portfolio and related history of litigation to defend those patents. *See* D.I. 15-3. The Court finds that these allegations reflect targeted communications directed at Plaintiff and its specific products. In light of these allegations, Defendants' contention that their actions are insufficient to establish a case or controversy is unavailing.[3] *Danisco U.S. Inc*, 744 F.3d at 1329 ("Article III does not mandate that the declaratory judgment defendant have threatened litigation or otherwise take action to enforce its rights before a justiciable controversy can arise.")

Moreover, Defendants' enforcement actions, as a non-practicing entity, against other financial institutions further bolster Plaintiff's claim. *Prasco, LLC*, 537 F. 3d at 1341 ("Prior litigious conduct is one circumstance to be considered in assessing whether the totality of circumstances creates an actual controversy."). Defendants have initiated multiple lawsuits

---

[3] In support of its position, Defendants rely on *Element Six United States Corp v. Novatek Inc.*, No. 14-71, 2014 WL 12586395 (S.D. Tex. June 9, 2013), where the court dismissed a complaint seeking declaratory judgment for lack of subject matter jurisdiction. The Court found that correspondence from the defendant requesting additional information from the declaratory judgment plaintiff regarding its products, while merely identifying the defendant's patents, was insufficient on its own to constitute an affirmative act. *Id.* at 4. The court further observed that additional factors considered by the Federal Circuit were absent such as, a history of patent enforcement, the unilateral initiation of licensing discussions, and whether the patent holder derives its income solely from enforcement. Here, however, several of those factors are present. Therefore, Defendants' reliance is misplaced.

8

alleging that various entities have infringed the same patents at issue here. *See Intellectual Ventures I LLC et al v. Liberty Mutual Holding Company Inc. et al*, No. 2:23-cv-00525-JRG (E.D. Tex. Nov 15, 2023); *Intellectual Ventures I LLC et al v. Comerica Incorporated*, No. 2:23-cv-00524-JRG (E.D. Tex. Nov 15, 2023); *Intellectual Ventures I LLC et al v. JP Morgan Chase Bank, National Association*, No. 2:23-cv-00523-JRG (E.D. Tex. Nov 15, 2023). The Court also notes that subsequent to filing of this lawsuit, Defendants asserted the patents-in-suit against other entities. *See Intellectual Ventures I LLC v. Southwest Airlines Co.*, No. 7:24-cv-00277 (W.D. Tex. Nov 2, 2024); *Intellectual Ventures I LLC v. American Airlines, Inc.*, No. 4:24-cv-00980 (E.D. Tex. Nov 2, 2024); *Intellectual Ventures I LLC v. The Bank of New York Mellow Corporation.*, No. 3:25-cv-00631 (N.D. Tex. Mar 15, 2025). While "[l]ater events may not create jurisdiction where none existed at the time of filing," *GAF Bldg. Mats. Corp. v. Elk. Corp.*, 90 F. 3d 279, 483 (Fed. Cir. 1996), such events may reinforce the correctness of a court's conclusion regarding the existence of an actual controversy. *BP Chems. Ltd. v. Union Carbide Corp.*, 4 F. 3d 975, 980 (Fed. Cir. 1993) ("Although it is the situation at the time the suit was filed that establishes the existence *vel nom* of an actual controversy, subsequent events can reinforce the correctness of the conclusion."). Thus, Defendants' targeted communications and pattern of enforcing the DJ Patents supports an inference that a dispute is both real and immediate. *Microsoft Corp. v. DataTern, Inc.*, 755 F. 3d 899, 906 (Fed. Cir. 2014) ("[A] patentee's aggressive enforcement strategy, even in the absence of direct threats against the declaratory plaintiff, may also support jurisdiction."); *see also Panda Apparel, LLC v. Spirit Clothing Co.*, No. 14-5514, 2015 WL 5255249, *4 (D.N.J. Sept. 8, 2015) ("Spirit's multiple litigations concerning substantially similar products" demonstrate the existence of a case or controversy.). Under the totality of the circumstances, Defendants' conduct

9

can be reasonably inferred as demonstrating its intent to enforce its patent rights. *See Hewlett-Packard Co.,* 587 F. 3d at 1363.

## IV.    CONCLUSION

Accepting as true all well-pleaded factual allegations in Plaintiff's Complaint, and viewing these allegations in light most favorable to Plaintiff, the Court concludes that Plaintiff has established declaratory judgment jurisdiction as to non-infringement of the patents-in-suit. The facts alleged, under all the circumstances, show that there is substantial controversy, between parties having adverse legal interest, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment. Hence, the Court denies Defendant's Motion to Dismiss Plaintiff's Complaint (D.I. 13).