# FARNAN LLP

June 2, 2026

**VIA E-FILING**
The Honorable Gregory B. Williams
U.S. District Court for the District of Delaware
J. Caleb Boggs Federal Building
844 N. King Street
Unit 26, Room 6124
Wilmington, DE 19801-3555

> Re:     *Assurant, Inc. v. Intellectual Ventures I LLC, et al.,*
>         C.A. No. 24-cv-344-GBW

Dear Judge Williams:

Pursuant to the Court's May 29, 2026 Oral Order (D.I. 33), Defendants Intellectual Ventures I LLC, Intellectual Ventures II LLC, and Callahan Cellular LLC (collectively, "IV" or "Defendants") submit this letter in support of their position with respect to the disputed proposed Scheduling Order submitted on May 28, 2026 (D.I. 32).

The Court instructed the parties to "file a joint proposed Scheduling Order in this action consistent with the applicable form Scheduling Order of Judge Williams, which is posted at http://www/ded/uscourts.gov." D.I. 24.  Defendants have complied.  Plaintiff Assurant, Inc. ("Assurant" or "Plaintiff"), however, proposes numerous additions covering almost every topic in this case to the disclosures required by Paragraph 3 of the Court's form.

Assurant's requests are not narrowly tailored.  Assurant seeks early disclosures and premature responses from IV on infringement, validity, other defenses such as exhaustion, and damages.  Some examples include but are not limited to:

- Paragraph 3(e)(iii) adds "[f]or each claim alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute or are inducing that direct infringement.  Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described."  However, this addition requires specific information from IV regarding indirect infringement without any corresponding obligation for Assurant to produce documents and information related to its specific acts of indirect infringement – some of which are only known by Assurant – and which entity/entities are responsible for committing the infringing acts (*e.g.*, potential third-party supplier/vendors).  Given the technology at issue goes to backend cloud infrastructure/server-side technologies (*e.g.*, Docker, Kafka, Kubernetes), Assurant's proposed addition necessitates extensive discovery into Assurant's internal systems and infrastructure and expert analysis of the same.

- Paragraph 3(e)(vii) adds "[t]he timing of the point of first infringement, the start of claimed damages, and the end of claimed damages," which prematurely requires damages

The Honorable Gregory B. Williams
June 2, 2026
Page 2

disclosures without any commitment from Assurant for fulsome damages discovery almost guaranteeing supplementation and further discovery.

- Paragraph 3(e)(ix)(4) adds "[i]f a party identifies Embodying Instrumentalities as described above, documents sufficient to show the operation of any aspects or elements of such instrumentalities the patent claimant relies upon as embodying any asserted claims" which necessarily requires an analysis of third-party products, services, documents, and/or source code.

- Paragraph 3(ix)(6) adds "[a]ll agreements that Intellectual Ventures contends are comparable to a license that would result from a hypothetical royalty negotiation" and Paragraph 3(ix)(7) adds "[a]ll agreements that otherwise may be used to support Intellectual Ventures' damages case," both of which require a premature damages analysis at the outset of the case by IV with limited information from Assurant.

- Paragraph 3(ix)(9) seeks "[a]ll invalidity contentions and prior art references from third parties related to the asserted patent(s) that are in Intellectual Ventures' possession, custody, and control." However, invalidity contentions from other cases are not relevant to this case, and requiring IV to produce documents from different actions is not proportional to the needs of this case. It is also a one-way street without any corresponding early disclosure from Assurant such as its contentions in any prior action in which the same functionalities were accused of infringement.

Contrary to Assurant's assertion, its extraneous additions to Paragraph 3 Disclosures places a significant burden on IV regardless of whether IV has litigated some of the asserted patents in other cases. For example, Assurant identified a scheduling order from a different case involving different patents, *Viasat, Inc. v. Intellectual Ventures I LLC, et al.*, Case No. 25-056-CFC, D.I. 45 (D. Del. May 15, 2025), to support its additional Paragraph 3 Disclosures. *See* Ex. 1, Assurant's redlines and comment on proposed scheduling order at p. 4 (explaining that the additional document production requirements accompanying infringement contentions are "[l]argely adopted from *Viasat, Inc. v. Intellectual Ventures I LLC, et al.*, No. 25-056-CFC, D.I. 45 (May 15, 2025)."). However, in *Viasat*, Chief Judge Connolly ordered the parties to submit a proposed scheduling order following his form for Non-Hatch Waxman Patent Cases. That is, the *Viasat* order Assurant identifies to support its additions to Paragraph 3 Disclosures tracks the form specific to Chief Judge Connolly assigned to that case, but is inapplicable to and inconsistent with Your Honor's form.

Assurant also seeks early production of licenses to potentially resolve exhaustion issues, and contends that IV acknowledges the relevance of licensed cloud providers in its counterclaims. As set forth in IV's Answer and Counterclaims, Defendants state that they "do not accuse the public clouds of Plaintiff, to the extent those services are provided by a cloud provider with a license to Defendants' patents that covers Plaintiff's activities. Defendants accuse Plaintiff private clouds that implement [Spark, Kubernetes, Docker] and non-licensed public clouds that Plaintiff uses to support [Spark, Kubernetes, Docker] for its systems and services." *See* D.I. 31-4 at n. 1, D.I. 31-5 at n. 1, and D.I. 31-6 at n. 1. IV has no intention of pursuing infringement allegations to the extent Assurant's accused use is covered by a relevant third-party license. It is IV's position that Assurant's proposed Paragraph 3(e)(ix)(5) is burdensome and not proportional to the needs of the case at this juncture, especially because the existence of certain licenses will not establish that

The Honorable Gregory B. Williams
June 2, 2026
Page 3

all relevant Assurant implementations, systems, or workflows fall within the scope of those licenses. That said, to the extent the Court is inclined to require some early license-related discovery, a targeted approach is far more proportional than Assurant's request for production of all license agreements. IV is willing to timely produce any license agreement relating to a component, product, service, platform, supplier, vendor, cloud provider, or other third-party technology that Assurant identifies as being used in the accused instrumentalities or as giving rise to a potential exhaustion or license defense. Such targeted production would provide Assurant with the information necessary to evaluate any exhaustion or license-based defenses while avoiding the burden and disproportionality associated with producing all license agreements irrespective of any connection to the accused functionality. To facilitate such production, Assurant should identify the third-party products, services, platforms, cloud providers, suppliers, vendors, or other technologies that are used in the accused instrumentalities and that Assurant contends may give rise to an exhaustion or license defense. Accordingly, targeted production of licenses associated with technologies identified by Assurant provides a direct and proportional means of addressing any exhaustion concerns without requiring production of all license agreements relating to the asserted patents.

Should Your Honor have any questions, IV is available at the convenience of the Court.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: All Counsel of Record (Via E-Filing)

3